## MERCANTILE TRUST COMPANY OF BALTIMORE AND ALEXANDER C. NELSON, TRUSTEES OF THE ESTATE OF CHARLES D. FISHER, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68338. Promulgated February 19, 1935.

*J. Robert Sherrod*, Esq., and *James B. Diggs*, Esq., for the petitioners.

*Harold Allen*, Esq., for the respondent.

### OPINION.

LEECH: This proceeding seeks redetermination of an income tax deficiency of $21,285.68 determined against petitioners for the calendar year 1929.

Petitioners assign as error, the respondent's determination that they sold certain real estate, theretofore held for investment. Petitioners allege that such property was exchanged for cash and like property to be held for investment. In the alternative, if the transaction is held to be a sale and purchase and not an exchange, petitioners assign error in respondent's determination of the March 1, 1913, value of the property, disposition of which was made in that transaction.

The stipulation of facts pertinent to the first issue, including the agreements, deeds, checks, and papers executed by the several parties to the 1929 transaction in controversy, is included herein by reference.

Petitioners are the duly constituted trustees of the estate of Charles D. Fisher, who died testate in 1905. On and before March

7, 1929, as trustees of the Fisher estate, they held title to two parcels of real estate known as 114–116 East Baltimore Street, Baltimore, Maryland, hereinafter referred to as the Baltimore Street property. Such properties were contiguous to the property known as the Emerson Hotel and were leased to and occupied by a restaurant. At the same time the estate of Annie E. O. Wylie owned real estate known as 223 West Lexington Street, Baltimore, Maryland (hereinafter referred to as the Lexington Street property), which was rented under a long term lease to F. W. Woolworth & Co.

On March 7, 1929, petitioners, as trustees of the Fisher estate, entered into a written contract with the Title Guarantee & Trust Co. (hereinafter referred to as the Title Co.) under the terms of which petitioners agreed with the Title Co. to exchange the Baltimore Street properties, as an entirety in fee simple, for the Lexington Street property in fee simple, subject to the outstanding lease thereon, and $33,000 cash. The agreement further provided that in the event the Title Co. could not obtain ownership of the Lexington Street property by purchase, the petitioners could require the Title Co. to pay $300,000 cash for the Baltimore Street properties in lieu of the above mentioned exchange. The Title Co. paid $4,000 to petitioners at the execution of this contract, which sum was to be credited to the Title Co. upon consummation of the transaction.

On March 11, 1929, the Title Co. entered into a written contract with the trustee of the Wylie estate for the purchase of the Lexington Street property for a price of $267,000 cash. The Title Co. paid that trustee, at the execution of this contract, $1,000 to be credited to the Title Co. upon consummation of that transaction.

On March 11, 1929, the Title Co. entered into a written contract for the sale of the Baltimore Street property to the Emerson Hotel Co. for a price of $300,000 cash. The Emerson Hotel Co. paid the Title Co. $5,000 upon execution of this contract, which was to be credited to the Emerson Hotel Co. upon consummation of this transaction.

On April 15, 1929, the parties to the several contracts simultaneously executed the following deeds of conveyance. The trustee of the Wylie estate deeded to the Title Co. the Lexington Street property. The Title Co. deeded to the petitioners, as trustees of the Fisher estate, the Lexington Street property. The petitioners, as trustees of the Fisher estate, deeded to the Title Co., the Baltimore Street property. The Title Co. deeded to the Emerson Hotel Co. the Baltimore Street property.

On the same date, April 15, 1929, pursuant to the contracts and deeds, the following cash payments were made. The Emerson Hotel Co. issued its check payable to the Title Co. in the sum of $294,416.67

representing the agreed purchase price of $300,000 for the Baltimore Street property less adjustments for the $5,000 paid by Emerson Hotel Co. upon execution of the contract of sale and rent for a half month. Such check was deposited in the Title Co.'s bank account. The Title Co. issued its check payable to the trustee of the Wylie estate in the sum of $265,478.42 representing the agreed purchase price of $267,000 for the Lexington Street property, less adjustments for the $1,000 paid by the Title Co. upon execution of the contract of sale and rent for a half month. The Title Co. issued its check payable to the petitioner, Mercantile Trust Co., trustee of the Fisher estate, in the sum of $28,938.25 representing that part of agreed purchase price to be paid in cash (in addition to the deed to the Lexington Street property) for the Baltimore Street property, that is, $33,000 less adjustments for the $4,000 paid by the Title Co. upon the execution of the contract and rent for a half month. The petitioners paid commissions and title fees amounting to $8,573.10, leaving the sum of $24,426.90 as the net cash received on the transaction.

In their return for the Fisher estate for 1929, the petitioners reported a capital gain of $24,426.90 as representing the net cash received on a transaction which was an exchange of real property for other like property, held for investment.

The respondent disregarded the form of the transaction and determined that petitioners sold the Baltimore Street property to the Emerson Hotel Co. for $300,000 cash and then purchased the Lexington Street property in two separate transactions. He computed a capital net gain of $179,621.10 as follows:

| | | |
|---|---:|---:|
| Sales Price Baltimore Street property | | $300,000.00 |
| Less Commission and Title Fee | | 8,573.10 |
| | | $291,426.90 |
| Fair Market Value on March 1, 1913 | $125,000.00 | |
| Less depreciation on value of building $41,666 at 2% for 15 years and 10 months | 13,194.20 | |
| | | 111,805.80 |
| Capital net gain | | $179,621.10 |
| Capital net gain reported | | 24,426.90 |
| Increase | | $155,194.20 |

Respondent contends that while there is no imputation of fraud, "because no deception was practiced and means legal in themselves were used", the proposed exchange was a sham device for tax avoidance. He further contends that the Title Co. acted purely as an agent or dummy and not as a principal for the purchase and sale of either of the properties; that the governing factor in the transaction was a sale of the Baltimore Street property by petitioners to the Emerson Hotel Co. because the latter desired it, while petitioners objected to the realization of a large taxable profit; that

the transaction was carried out in the form above outlined to prevent a straight sale of the Baltimore Street property by petitioners to the Emerson Hotel Co. for cash; that the whole device was so essentially fictitious, the form should be disregarded and the transaction held to be a sale of the Baltimore Street property by petitioners for cash and then, in a separate transaction, a purchase of the Lexington Street property by petitioners for cash.

Respondent argues that the Emerson Hotel Co. was the moving party and the Title Co. was its agent in acquiring petitioners' Baltimore Street property. This may be true. But even if it were, respondent's position is not helped thereby.

If the Title Co. were acting as agent for the Emerson Hotel Co., then clearly it purchased the Lexington Street property on behalf of the Emerson Hotel Co. and, pursuant to its agreement with petitioners, but acting for the Emerson Hotel Co., exchanged the Lexington Street property plus $33,000 for the Baltimore Street property. Certainly, the Title Co. as agent for the Emerson Hotel Co. did not purchase the Baltimore Street property for $300,000 cash as contended by respondent.

In our opinion, the respondent's position cannot be sustained unless the Title Co. represented the petitioners as *their* agent, both in the transfer of the Baltimore Street property to the Emerson Hotel Co., and in the purchase of the Lexington Street property. The record, however, conclusively contradicts the existence of that status in either transaction. Petitioners' only contract disclosed here was with the Title Co. *alone*. It was enforceable against that company as principal. In the event the Title Co. had not been able to secure title to the Lexington Street property, and thus comply with the exchange provisions of the contract, petitioners could have compelled the Title Co., individually, to pay $300,000 to petitioners for the Baltimore Street property. The Title Co. was the party acquiring the Baltimore Street property. The consideration was to be paid by the Title Co. and the latter did, in fact, pay to the petitioners, in its own behalf, $4,000 upon the execution of that contract. The balance due under the exchange provisions of the contract upon its consummation, namely, the remainder of the cash consideration and the transfer of title to the Lexington Street property, was received by the petitioners from the Title Co. in the performance of the individual obligation of that company.

It may be true, as urged by respondent, that the Emerson Hotel Co. desired the Baltimore Street property and was willing to pay a price which would have netted petitioners a large profit. In any event petitioners could have sold that property for cash, thus incurring a tax liability, and then invested the proceeds in other property as an investment, or, they could have effected an exchange of

this investment property for property of a like kind and thus avoided tax liability by postponing the realization of recognized gain as provided by section 112 (b) (1) and (c) (1) of the Revenue Act of 1928.[1]

Respondent admits that the transaction was carried out in a legal manner, and that no fraud was perpetrated. We cannot find that it was a mere device, essentially fictitious. The several agreements and deeds executed, and the cash payments made by the four interested parties were not simulated transactions. They were intended to and did constitute juristic facts—not fictions. The agreements created fixed liabilities. The deeds transferred legal title. The cash payments were real. Petitioners actually conveyed the Baltimore Street property to the Title Co. They likewise received from that company, in exchange, the Lexington Street property and $33,000. These real transactions must here be given their normal effect. So, our single inquiry is whether these facts bring the petitioners in the pending transaction within the scope of the quoted statutory provisions. *Gregory* v. *Helvering*, 293 U. S. 465; *Royal Marcher*, 32 B. T. A. 76.

The obvious purpose and effect of these provisions, as well as their predecessors, in the Revenue Act of 1921, section 202 (c) (1),[2] (d) (1),[3] and (e),[4] and the amendment of the Act of March 4,

[1] SEC. 112 (b) (1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is *exchanged solely for property of a like kind to* be held either for productive use in trade or business or for investment.

\* \* \* \* \* \* \*

(c)(1) If an exchange would be within the provisons of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[2] SEC. 202 (c) (1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use.

[3] SEC. 202 (d) (1) Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, *except as provided in subdivision* (e).

[4] SEC. 202 (e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the money or the fair market value of such other property received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess.

1923, was to permit the postponement of recognition of taxable gain or loss upon an exchange there described until the disposition of the property received in the exchange. In the ultimate analysis of the present transaction, this was all petitioners intended or accomplished.

The present exchange was not connected with a corporate reorganization. Neither in the last-quoted provisions nor in their successors, here applicable, does there appear any express or implied indication of a legislative intent to premise the nonrecognition of gain or loss there provided upon any other condition than that stated specifically therein. Compare *Gregory* v. *Helvering, supra*, which construed subsections (g) and (i) (1) (B) of the same section (112) and Revenue Act (1928) here under consideration. Nonrecognition of gain or loss does not depend here upon the impossibility of a sale of the property by the taxpayer. The only condition precedent to that nonrecognition is the actual exchange of property held for investment for like property to be held for investment, with or without so-called "boot." Cf. *John S. Garvan*, 23 B. T. A. 817; *George E. Hamilton*, 30 B. T. A. 160; *Loughborough Development Corporation*, 29 B. T. A. 95; *W. H. Hartman Co.*, 20 B. T. A. 302; *Sarther Grocery Co.*, 22 B. T. A. 1273.

In the cited case of *Gregory* v. *Helvering, supra*, the Supreme Court determined the taxable status of the questioned transaction "by what actually occurred"—the receipt of the taxed stock by the taxpayer. To sustain respondent upon the present record, we would be compelled to ignore the exchange that actually occurred, and tax, as received by the taxpayers, money never, in fact, received by or for them, in a sale that did not occur. We cannot here thus substitute fiction for fact.

If petitioners' present alternative agreements to exchange or sell had been with the trustee of the Wylie estate and the Emerson Hotel Co., separately, clearly it could not be said that an actual exchange of petitioners' investment property with the former party was an actual sale of it to the latter, merely because petitioners exchanged rather than sold the property for the purpose of postponing or avoiding income taxes. Since such agreements were with the same party, the Title Co., this admitted purpose does not convert petitioners' actual nontaxable exchange into a taxable sale. *Gregory* v. *Helvering, supra; Bullen* v. *Wisconsin*, 240 U. S. 625.

The above mentioned agreement of March 7 evidenced an intention to exchange the Baltimore Street property, if certain conditions were met, and to sell it, if those conditions were not met. Those conditions were met. The property was, in fact, exchanged. That fact is controlling here. *United States* v. *Phellis*, 257 U. S. 156; *Sarther Grocery Co., supra.*

We conclude that the petitioners exchanged real property held for investment, for like property to be held for investment, plus $24,426.90 net cash. So, pursuant to section 112 (b) (1) and (c) (1), *supra*, the recognized gain does not exceed the amount of cash received by them in the exchange. Cf. *George E. Hamilton, supra; Loughborough Development Corporation, supra; W. H. Hartman Co., supra.*

It is thus not necessary to determine the alternative issue of the March 1, 1913, value of the Baltimore Street property.

Reviewed by the Board.

*Judgment will be entered for the petitioners.*