[Civ. No. 4616.   Fourth Dist.   July 24, 1953.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. HAROLD R. PAULEY et al., Respondents.

356

Stammer & McKnight for Appellant.

Dearing, Jertberg & Avery, Lillick, Geary & McHose and Raymond Tremaine for Respondents.

MUSSELL, J.—This is an action to recover amounts due from defendants to plaintiff under the terms and conditions of a written guaranty executed by the defendants. The action was tried before a jury which, after having been instructed by the court so to do, found for the defendants and against the plaintiff. This appeal is taken by plaintiff from the judgment for defendants which was thereupon entered. The material facts are not in dispute and are substantially as set forth in a stipulation contained in the clerk's transcript.

Prior to May 20, 1946, plaintiff had loaned various sums of money to Fresno Iron Works, a copartnership, on an unsecured basis. On said date Fresno Iron Works, a corporation, was formed. The corporation took over all of the assets of the partnership and the partners became stockholders in the corporation. Application was then made by the corporation to plaintiff bank for additional loans. Before making these loans, the bank insisted and it was agreed that these new loans and those previously made would be consolidated into long term loans, and that the indebtedness of the corporation should be guaranteed by the stockholders and secured by the property of the corporation.

The bank then, in the early part of September, 1946, prepared and delivered to Alfred R. Gaggs a printed form denominated "Continuing Guaranty" with the request that he have it executed by the stockholders. Mr. Gaggs was the president, and a director and stockholder of Fresno Iron Works, a corporation, and had been a partner in the partnership which preceded the corporation. He received the printed form from Mr. Nielsen, vice-president and manager of the Bank of America at Fresno, who told him that in case of loans to a new, closely held corporation it was the policy of the bank to require the guaranty, and that in this case, since the bank was making loans to an untried management on the security of a one purpose building and specialized equipment, the guaranty would be required. Mr. Gaggs took the printed form to Los Angeles where it was read and discussed at an informal meeting of the stockholders and directors of the corporation and with the attorney for the corporation. At that meeting the stockholders objected to the provisions in the printed form which placed 100 per cent liability on each guarantor. After further discussion with Mr. Nielsen, another meeting of the stockholders and directors was held at which all of the proposed guarantors were present except Mr. North. The proposed guaranty was then fully discussed between the guarantors and the attorney for the corporation, who then drafted an amendment and filled in the blanks on the original printed form. After the guarantors had read the amendment and discussed it with their attorney, they signed both documents and delivered them to the bank, where they were accepted by Mr. Nielsen.

The guaranty and the amendments thereto were dated September 30, 1946, and the material portions thereof are as follows:

"To BANK OF AMERICA National Trust and Savings Association.

"(1)    For valuable consideration, the undersigned guarantors jointly and severally unconditionally guarantee and promise to pay to the Bank of America, on demand, . . . any and all indebtedness of Fresno Iron Works, a corporation (hereinafter called Borrowers) to Bank. . . .

"(2)    The liability of guarantors shall not exceed at any one time the sum of $150,000.00 . . . Notwithstanding the foregoing, Bank may permit the indebtedness of Borrowers

to exceed Guarantors' liability. This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. . Any payment by Guarantors shall not reduce their maximum obligation hereunder, unless written notice to that effect be actually received by Bank at or prior to the time of such payment.

"(3) The obligations hereunder are joint and several, and independent of the obligations of Borrowers. . . .

"(4) Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder . . . to take and hold security for the payment of this guaranty or the indebtedness guaranteed, and exchange, enforce, waive and release any such security; and to apply such security and direct the order or manner of sale thereof as Bank in its discretion may. determine. . . .

"(5) Guarantors waive any right to require Bank to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; or (c) pursue any other remedy in Bank's power whatsoever. Guarantors waive any defense arising by . . . reason of any disability or other defense of Borrowers or by reason of the cessation from any cause whatsoever of Borrowers. Until all indebtedness of Borrowers to Bank shall have been paid in full, . . . Guarantors shall have no right of subrogation, and waive any right to enforce any remedy which Bank now has or may hereafter have against Borrowers, and waive any benefit of, and any right to participate in any security now or hereafter held by Bank.

". . . . . . . . . . .

"(9) Guarantors agree to pay a reasonable attorneys' fee and all other costs and expenses which may be incurred by Bank in the enforcement of this Guaranty.

### "AMENDMENT TO CONTINUING GUARANTY
### "FRESNO IRON WORKS

"Any provision to the contrary notwithstanding, the liability of the undersigned as guarantors, as set forth in that certain continuing guaranty agreement attached hereto and of which agreement this instrument is an amendment, is limited to the extent related below.

"Each of the undersigned guarantors shall be liable for the debts of said Fresno Iron Works only to the extent their

respective interests bear to the total indebtedness of said corporation guaranteed hereunder as follows:

| Name | Limit of Guarantee |
|---|---|
| Alfred R. Gaggs | 28.75% |
| Mary Gaggs | 28.75 |
| Harold R. Pauley | 25.00 |
| William J. North | 5. |
| Claude L. Cameron | 2.5 |
| W. Jos. McFarland | 5. |
| Hollis T. Riley | 5.'' |

After having received this guaranty and the amendment thereto, the bank, between September 30, 1946 and December 7, 1948, loaned Fresno Iron Works, a corporation, a total sum of $343,397.66, of which $213,318.34 was repaid, leaving a principal balance unpaid of $130,079.32 which, in addition to the guaranty, was secured by a trust deed and a chattel mortgage. Between September, 1946, and December 7, 1948, Fresno Iron Works suffered financial reverses and its plant was demolished by fire. On December 7, 1948, the corporation was indebted and in default to the bank in the sum of $130,079.32, principal, and $3,290.20, interest, and on that date the Bank, by registered mail, made written demand upon each of the guarantors for the payment of his proportionate share of that amount.

On December 16, 1948, a meeting of the interested parties was held at the office of Mr. Stammer, attorney for the bank, at Fresno. J. F. Meilike, in charge of the loan adjustment department of the bank, Mr. Nielsen and guarantors Pauley, Riley, North, Cameron and McFarland were present and the situation was discussed. At this meeting Mr. Stammer told the guarantors that the bank was going to rely upon the guaranty of the whole debt no matter what happened to the security and the guarantors stated that they planned to file a petition in bankruptcy for the Fresno Iron Works. Such a petition was filed December 16, 1948, and the corporation was thereafter adjudicated a bankrupt.

Between April 1, 1949, and May 31, 1950, the bank exhausted all of the security held by it under the deed of trust and chattel mortgages and received therefrom the net sum of $71,155.50, which was applied by the bank to the principal amount of the indebtedness of Fresno Iron Works, a corporation.

On December 31, 1949, defendant McFarland paid on account of the principal indebtedness of the iron works corporation and of his guaranty the sum of $1,750 and this amount was applied by the bank to the indebtedness of the corporation and to the amount of McFarland's guaranty.

In March, 1950, Alfred Gaggs and Mary Gaggs filed voluntary petitions in bankruptcy and their obligations to the bank on the guaranty were discharged in bankruptcy on June 15, 1950, and December 1, 1950. On January 29, 1951, the guaranty obligation of Hollis T. Riley was likewise discharged in bankruptcy.

On October 19, 1949, another registered letter of demand was mailed by the bank to each of the guarantors, reiterating the demand contained in the bank's letters to said guarantors of December 7, 1948, and demanding immediate payment of the same amounts as set forth therein.

On April 17, 1950, defendant Pauley deposited $17,716.55 in the name of the plaintiff with the Security First National Bank of Los Angeles and tendered said amount in full satisfaction of his obligation under the guaranty. A like tender was made on the same date by defendant Cameron of $1,771.66 and by defendant McFarland in the sum of $1,793.31. These tenders were refused by the plaintiff bank.

It was stipulated that on April 17, 1950, as a result of the application upon said indebtedness of Fresno Iron Works, a corporation, of the net proceeds to that date received from the properties held under said trust deed and chattel mortgages and said payment of $1,750 made on December 31, 1949, by defendant McFarland there remained unpaid from Fresno Iron Works, a corporation, to the Bank of America National Trust and Savings Association a balance of $55,845.88, principal, and $9,780.10, interest.

On June 23, 1950, the bank filed this action to recover from the guarantors the amounts stated in the demands made upon them by the bank in the letters of December 7, 1948.

It is the position of the appellant bank that the written contract of guaranty speaks for itself and that both the written contract and the parol evidence received by the court in aid of its construction demonstrate as a matter of law that the parties intended exactly what was expressed in the written contract, to wit, that each of the defendants guaranteed a certain percentage of the total indebtedness of Fresno Iron

Works guaranteed thereunder on the date liability under the guaranty accrued, which was on December 7, 1948, when the plaintiff made demand upon the guarantors for the payment of their guaranties; and that until all of the indebtedness of Fresno Iron Works to the bank is paid in full, and so long as the bank does not attempt to collect from all sources more than the total amount of the indebtedness of Fresno Iron Works to the bank, the amount of each defendant's obligation under the guaranty is not affected in any way by the enforcement of any other security and the guarantors have no right to benefit from the sale of such other security.

It is the position of respondents that in executing the continuing guaranty, they insisted upon limiting their respective liability so that some of them with substantial assets would not be called upon to pay the proportions of others who might not be able to pay; that an amendment was prepared to recite this limitation; that it was the intent of the parties that each of the guarantors guaranteed only his percentage of whatever deficiency remained after the sale of other security and the application thereof to the total indebtedness of Fresno Iron Works. That is to say, appellant claims that each guarantor must pay his percentage of the principal amount of $130,079.32, which was the total indebtedness of Fresno Iron Works before exhausting the other security and respondents claim that they are required to pay only their percentage of the deficiency after exhausting the other security.

At the conclusion of the trial appellant moved for a directed verdict in favor of the plaintiff upon the ground that the written contract was controlling and upon the further ground that all of the evidence presented before the jury demonstrated beyond the point where reasonable minds could differ upon the subject and as a matter of law, that plaintiff was entitled to a judgment in its favor. Respondents then made a similar motion for a directed verdict in their favor. This motion was granted and the verdict of the jury against the plaintiff was returned in accordance therewith.

The uncontradicted evidence is that on December 7, 1948, the Fresno Iron Works, a corporation, was indebted to the bank in the sum of $130,079.32, principal, and $3,290.20 interest; that on said date the bank demanded of each defendant immediate payment of his proportion of said indebtedness as provided in the guaranty. On refusal of the guarantors to comply with such demand, the bank was then

in a position to file suit and secure a judgment for the amounts demanded. The guarantors promised to pay on demand any and all indebtedness of the Fresno Iron Works, a corporation. The guaranty authorized the bank, without affecting the liability of the guarantors, to take and hold security for the payment of the indebtedness guaranteed and to apply such security as in its discretion it might determine. Guarantors also waived any right to require the bank to exhaust any security held from borrowers until all indebtedness of borrowers to the bank was paid in full and waived any benefit of, and any right to participate in any security then or thereafter held by the bank.

However, the amendment to the guaranty provides that *any* provision to the contrary notwithstanding the liability of the guarantors is for the debts of the Fresno Iron Works only to the extent that their respective interests bear to the total indebtedness of the corporation. On December 7, 1948, the total indebtedness of the iron works corporation was $133,369.52 and each of the guarantors owed a stated percentage of that amount. Pauley, for example, owed 25 per cent of that amount, or $33,342.38. While the bank was not required to sell the securities held by it, nevertheless this was done and $71,155.50 was applied by the bank to the indebtedness of the corporation, thereby reducing such indebtedness to the total sum of $62,214.02 as of June 23, 1950, when the complaint herein was filed. Since the bank applied $71,155.50 to the indebtedness of the iron works corporation, Pauley, for example, as owner of 25 per cent of the stock of the corporation, was entitled to a credit of 25 per cent of $71,155.50, or $17,788.88 on his total liability of $33,342.38, leaving a balance due from him to the corporation in the sum of $15,553.50, plus interest. Interest at 5 per cent per annum on $33,342.38 from December 7, 1948, to April 17, 1950 (the date Pauley tendered payment in the sum of $17,716.55 in payment of his obligation) amounts to $2,268.61, which, when added to $15,553.50, amounts to the sum of $17,822.11, exceeding the amount of the tender in the sum of $105.56. This difference may be accounted for in the amount of interest due by reason of the application of the security to the reduction of the indebtedness. In making his tender on April 17, 1950, Pauley apparently calculated the amount due the bank on a basis of 25 per cent of the remaining indebtedness of the iron works, plus interest from March 10, 1950, to April 17, 1950. How-

ever, the amount of his liability is practically the same, thus calculated, as that based upon the calculation here set forth, and the difference in McFarland's case is only a few cents.

The contention of the bank is that the guarantors are liable for their proportionate share of the indebtedness of the iron works as of December 7, 1948, and that the guarantors were not entitled to a credit for the amount paid on the indebtedness of the corporation unless it was paid in full. We do not agree with this contention. The guarantors were responsible only for their proportionate share of the indebtedness of the corporation and since it was reduced by the application of sums received from the sale of securities, the guarantors were entitled to the benefit of such reduction.

In *Thorpe* v. *Story,* 10 Cal.2d 104 [73 P.2d 1194], action was brought by a bondholders' committee against several guarantors to recover upon a written guaranty of a bond issue which limited the liability of each guarantor to a certain percentage of the amount of the bonds. The whole bond issue had been sold but part of the bonds had been paid and retired and the bondholders' committee was the assignee of a portion of the unretired bonds. Plaintiffs claimed that they were entitled to recover from each guarantor his percentage of the entire bond issue but the trial court gave judgment against each guarantor for only the proportionate share of each of the bonds which had been assigned to the bondholders' committee. In commenting upon the action of the trial court, the Supreme Court said, at page 130:

"We are in accord with the construction placed upon the guaranty by the trial court. By the plain import of its terms it gives to each bondholder a right of action against each guarantor for a fractional proportion of the indebtedness represented by each bond, so that the payment of a bond proportionately reducing the main indebtedness, satisfies each guarantor's proportionate liability for payment of the bond retired. In this way, plaintiffs holding $216,000 of the bonds, would be entitled to recover, for example, from defendant Robbins, 5/60th of that sum with interest, and in like manner from each other guarantor. It is not necessary to discuss with greater particularity plaintiffs' analysis of the language of the guaranty, as it appears on the face of the instrument that the above construction is the proper one."

And on page 131:

"The guaranty, in our view, imposes only a several liability,

regardless of which method is used to compute it, and in reality the judgment for which plaintiffs are asking is simply a several judgment against each defendant guarantor for his fraction of the entire indebtedness without deduction for retired bonds. But we find no warrant under the terms of the guaranty for holding any guarantor liable for more than his proportion of the unpaid indebtedness. Plaintiffs' argument seems strained and it does not support any reasonable interpretation of the guaranty. The actual wording of the instrument, and its only clear and reasonable purport, imposes a several liability against the guarantors limited to fractional proportions of the outstanding unpaid indebtedness.''

While it is true that this case did not involve the sale or exhaustion of securities, the indebtedness of the guarantors was reduced by payment of some of the outstanding bonds and in the instant case it was reduced by application of the proceeds from the securities held by the bank.

It is true, as contended by appellant, that the bank was not required to exhaust the security which it held or apply the proceeds to the reduction of the indebtedness of Fresno Iron Works before proceeding against the guarantors on the contract as the obligation of the corporation and that of the guarantors are entirely independent obligations. (*Loeb* v. *Christie,* 6 Cal.2d 416, 420 [57 P.2d 1303] ; *Everts* v. *Matteson,* 21 Cal.2d 437, 444 [132 P.2d 476] ; *Security-First Nat. Bank* v. *Chapman,* 41 Cal.App.2d 219, 221 [106 P.2d 431].) However, the bank did sell the security herein and did apply the sums received to the debt of the iron works corporation and these cited cases are not decisive of the question here involved.

The respondents herein demanded a trial by jury apparently on the theory that if the guaranty and amendment were interpreted so differently by the parties, the instrument may have been ambiguous, in which event the intent of the parties would have to be determined by evidence offered to demonstrate the true intent, meaning and legal effect. Appellant argued that the contract was unambiguous and its meaning clear and that the intent of the parties could and must be determined from the language of the agreement. The testimony adduced before the jury did little more than emphasize the interpretation sought to be placed upon the contract by each of the parties. The trial court concluded that since there was no dispute in the testimony as to material facts, it was proper to instruct the jury to return a verdict

for defendants. Such an instruction was proper under the circumstances shown by the record.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1953. Edmonds, J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.