**In re EXCHANGED TITLES, INC., a California corporation, Debtor.**

**Arthur R. DeGROOT and Joy A. DeGroot, as Trustees of the ARJA Trust, Plaintiffs,**

v.

**EXCHANGED TITLES, INC., a California corporation and Charles W. Daff, Chapter 7 Trustee, Defendants.**

**Bankruptcy No. SA 92–19222 JR.
Adv. No. SA 92–2207 JR.**

United States Bankruptcy Court,
C.D. California.

Sept. 15, 1993.

**304**

F. Richard Manzano, F.R. Manzano and Associates, Orange, CA, for plaintiff.

John C. Teal, Jr., Speers, Dana, Teal, Balfour & MacDonald, Costa Mesa, CA, for defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

## INTRODUCTION

In 1992, Mr. Arthur DeGroot and Mrs. Joy DeGroot ("Plaintiffs") transferred title to their Huntington Beach property to Exchanged Titles, Inc. ("Debtor") in hopes of effectuating a tax deferred property exchange under Internal Revenue Code § 1031 ("I.R.C.").

To accomplish the exchange, Plaintiffs entered into an escrow agreement. Under the escrow agreement, Debtor took title to property in Santa Ana, California in exchange for funds provided by Plaintiffs. Debtor took title to Plaintiffs' property in Huntington Beach and, in turn, transferred the Santa Ana property to Plaintiffs. Debtor then was to sell the Huntington Beach property and transfer the proceeds to Plaintiffs.

Mr. Charles Daff, Debtor's Chapter 7 trustee ("Trustee"), claims that the Huntington Beach property is property of the estate. In response, Plaintiffs seek the return of the Huntington Beach property.

I took the matter under submission and allowed the parties to file post-trial briefs.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (1991) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1991) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (I).

## STATEMENT OF FACTS

In 1982, Plaintiffs, as the trustees of the ARJA Trust, acquired the Huntington Beach property. Plaintiff Arthur DeGroot, a licensed real estate broker, is an experienced real estate investor who has participated in approximately six I.R.C. § 1031 tax deferred exchanges of real property.

Prior to June 1992, Plaintiffs located the Santa Ana property and decided to consummate an I.R.C. § 1031 exchange using the Huntington Beach property. To assist in the exchange, Plaintiffs retained the services of Debtor, a professional accommodator for I.R.C. § 1031 exchanges.

A straight I.R.C. § 1031 exchange between two parties does not necessitate the services of an accommodator. Plaintiffs and First Fidelity Thrift and Loan Association, owner of the Santa Ana property, would simply exchange the two properties without either party recognizing income on the exchange. First Fidelity, however, wanted to cash out on the exchange.

Plaintiffs, therefore, used Debtor as a qualified intermediary, or professional accommodator. Normally, when an accommodator is retained, the exchanged property is transferred to the accommodator for sale. The proceeds from the sale are then used to purchase the replacement property.

In this case, however, the parties attempted a reverse exchange pursuant to an "Agreement for a Delayed Tax Deferred Agreement" (the "Agreement"). Plaintiffs entered into a written escrow agreement with Huntington Escrow Service, Inc. ("HES") whereby First Fidelity agreed to transfer title to the Santa Ana property to

Debtor. Plaintiffs deposited $101,500 with HES to allow Debtor to close escrow on the Santa Ana property.

The Huntington Beach property, in the meantime, was transferred to Debtor. Following the receipt of title to the Santa Ana property, Debtor immediately transferred title to the Santa Ana property to Plaintiffs.

The plan was for Debtor to sell the Huntington Beach property to a third party and distribute the proceeds to Plaintiffs. For acting as an accommodator, Debtor received a $500 fee.

The Huntington Beach property did not sell before Debtor's Chapter 7 petition was filed. Plaintiffs, however, continued to control the Huntington Beach property and paid all tax and first trust deed obligations on the property. Plaintiffs also rented the Huntington Beach property, collected rents, initiated proceedings against the tenant for non-payment of rent, maintained the premises, paid property insurance, and refinanced the Huntington Beach property.

At trial, Arthur DeGroot testified that he intended to transfer legal title to the Huntington Beach property to consummate the I.R.C. § 1031 exchange while retaining all equitable rights to the Huntington Beach property. Trustee contends that in order to consummate an I.R.C. § 1031 exchange, both legal and equitable interests must transfer to the accommodator. The issue, therefore, is whether Plaintiffs retained an equitable interest in the Huntington Beach property, and if so, can Trustee terminate the interest using his strong arm powers

under § 544(a)(3) of the Bankruptcy Code (the "Code").[1]

**DISCUSSION**

■ Regardless of the actual effect of the exchange, the parties intended the transaction to satisfy the legal requirements of I.R.C. § 1031. The initial question, therefore, is whether the parties intended to transfer both legal and equitable rights to the Huntington Beach property.

In analyzing the Agreement at trial, I determined that the parties' intent on what was to be transferred was ambiguous.

■ When an agreement is ambiguous, the court can take evidence regarding the intent of the parties. *Bank of America v. Pauley*, 119 Cal.App.2d 355, 364, 259 P.2d 714 (4th Dist.1953); *York v. Strommen*, 105 Cal.App.2d 586, 596–97, 234 P.2d 134 (2d Dist.1951). Arthur DeGroot testified that he intended to transfer only legal title. Trustee did not rebut this testimony.

Trustee did argue, however, that in order to accomplish an I.R.C. § 1031 exchange, Plaintiffs were required to transfer both legal and equitable interests in the Huntington Beach property. The parties, therefore, intended a complete transfer of legal and equitable rights.

I am unaware of any precedent directly on point regarding whether both legal and equitable interests must transfer.[2] Several secondary authorities state that for purposes of an I.R.C. § 1031 exchange an intermediary acquires and transfers property if the intermediary acquires and transfers

1. Section 544(a)(3) provides:
   The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
   11 U.S.C. § 544(a)(3).

2. Trustee, in his supplement brief, refers to 12 CEB Real Prop.L.Rep. 233, 240 (Nov.1989) and *In re San Diego Realty Exchange, Inc.*, 132 B.R. 424 (Bankr.S.D.Cal.1991), as authority supporting his contention that mere transfer of legal title is insufficient for a successful reverse I.R.C. § 1031 exchange. Both authorities, however, are not applicable to the present case. The CEB article merely suggests a plan of action for the successful completion of an I.R.C. § 1031 exchange. In *San Diego Realty Exchange*, the exchange property was actually sold by the intermediary debtor. The dispute was over the replacement property purchased with the funds of the accommodator. Thus, the case is not helpful on the issue before me.

legal title to the property.[3] These authorities support the proposition that when utilizing the services of a qualified intermediary, nothing more than legal title is required for an effective I.R.C. § 1031 exchange.

Additionally, some courts have expressed an opinion on what constitutes an exchange under the I.R.C. *Alderson v. Commissioner of Internal Revenue*, 317 F.2d 790, 795 (9th Cir.1963); *citing Mercantile Trust Company of Baltimore v. Commissioner of Internal Revenue*, 32 B.T.A. 82, 1935 WL 138 (1935). In *Alderson* and *Mercantile Trust*, the parties agreed to a sale for cash if certain conditions for the exchange were not met. The conditions were met, and the properties were transferred. The courts had to determine whether the transactions were an exchange or a sale for cash because, for purposes of I.R.C. § 1031, a sale for cash disqualifies the taxpayer from any tax deferred benefits that the taxpayer would receive if the transaction was an exchange. *Alderson*, 317 F.2d at 795.

In *Alderson*, the Ninth Circuit stated that:

> [for] the purpose of the exchange ... there was no need for [the accommodator] to acquire a "real" interest in the ... property by assuming the benefits and burdens of ownership to make the exchange qualify under the statute.... [One] need not assume the benefits and burdens of ownership in property before exchanging it but may properly acquire title *solely for the purpose of exchange* and accept title and transfer it in exchange for other like property....

*Alderson v. Commissioner of Internal Revenue*, 317 F.2d 790, 795 (9th Cir.1963) (emphasis in original).

In my view, the transfer of legal title is sufficient to effectuate a reverse I.R.C. § 1031 exchange involving an accommodator. The parties here did not intend that both legal and equitable rights to the Huntington Beach property transfer to Debtor. This finding is supported by Mr. DeGroot's testimony and evidence that Plaintiffs continued in control of the Huntington Beach property, paid all financial obligations on the property, rented the property, collected rents, initiated proceedings against the tenant for non-payment of rent, maintained the premises, paid property insurance, and refinanced the Huntington Beach property.

Code § 541(d) provides that "[property] in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Accordingly, Plaintiffs have an equitable claim against the estate.

The next issue is whether Trustee can cut off this equitable claim using his strong arm power under Code § 544(a)(3). Section 544 provides in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— ...
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

■ A trustee, therefore, has the rights of a hypothetical bona fide purchaser upon the filing of the petition.[4] However, as the

---

3. 4 *Federal Tax Regulations* § 1.1031(k)–1(g)(4)(iv)(A) (1993); Ivan Faggen et al., *Federal Taxes Affecting Real Estate* § 8.01[14] (Matthew Bender ed., 6th ed. 1992); 13 *Federal Tax Coordinator 2d* ¶ I–2788.5 (1993).

4. The § 544(a)(3) hypothetical bona fide purchaser has been defined as follows:
   A person who:
   (1) at the instant the petition is filed, purchases from the debtor;
   (2) for value;

court stated in *In re Gurs*, 27 B.R. 163, 164 (9th Cir. BAP1983), "[t]he provision of § 544(a)(3) that the trustee takes the power of a bona fide purchaser of real property, 'without regard to any knowledge of the trustee or any creditor,' does not override provisions of state law which impute notice of claims to real estate...." Therefore, state law determines whether a trustee has constructive notice. *In re Marino*, 813 F.2d 1562, 1565 (9th Cir.1987).

 California Civil Code ("Cal.Civ. Code") § 19 defines constructive notice: "[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." Cal.Civ.Code § 19 (West 1982).

Under this definition, constructive notice is generally found when: (1) the claimant is in clear and open possession of the property;[5] (2) the claim has been recorded;[6] or (3) a notice of lis pendens has been filed.[7]

Based upon the evidence, including Plaintiffs' possession of the property, the business of the Debtor, and other indices of ownership, Trustee was put on notice to inquire into the status of the Huntington Beach property. Thus, I find that Trustee does not have hypothetical bona fide purchaser status under § 544(a)(3).

## CONCLUSION

Since the transfer of an equitable interest in property is not required for a reverse I.R.C. § 1031 exchange, Plaintiffs have an equitable claim to the Huntington Beach property. Here, Trustee is not a hypothetical bona fide purchaser under § 544(a)(3).

(3) in good faith;
(4) without actual knowledge of any defect or limitation in title;
(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;
(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

Trustee, therefore, is unable to avoid Plaintiffs' equitable claim to the Huntington Beach property.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

(7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).
*In re Gurs*, 27 B.R. 163, 165 (9th Cir. BAP1983).

5. *In re Thomas*, 147 B.R. 526, 530 (9th Cir. BAP1992).

6. *Id.*

7. *Gurs*, 27 B.R. at 165.