CARY A. EVERETT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Everett v. Commissioner
Docket No. 7348-74.
United States Tax Court
T.C. Memo 1978-53; 1978 Tax Ct. Memo LEXIS 462; 37 T.C.M. (CCH) 274; T.C.M. (RIA) 780053; February 13, 1978, Filed T. Heyward Vann and Thomas H. Vann, Jr., for the petitioner. Gerald W. Hartley, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $129,476.41 in petitioner's Federal income tax for 1971. Due to concessions by petitioner, the sole issue remaining for decision is whether the transfer by petitioner of certain timber rights in 1971 qualified for nonrecognition treatment under section 1031. [1]
*463 FINDINGS OF FACT Some facts have been stipulated and are so found. Petitioner, Cary A. Everett, resided in Chipley, Fla., at the time the petition herein was filed. Petitioner filed his Federal income tax return for 1971 with the District Director of Internal Revenue at Atlanta, Ga.
On August 7, 1970, petitioner purchased timber rights on approximately 5,101 acres of land in Florida as an investment (hereinafter referred to as the Everett timber rights). The rights thus acquired by petitioner were embodied in a timber lease covering three separate tracts of land. The lease granted petitioner the right to remove timber from two of these tracts for a period of six years from the date of the lease and from the third tract for a period of 36 months. [2]
On January 12, 1971, W. A. McClung (McClung), a real estate broker, acquired an option to purchase approximately 26,000 acres of property in Florida *464 between January 25, 1971, and September 20, 1971, from the estate of E. L. Jordan for $2,500,000. The property consisted of land and the rights to the timber located thereon (hereinafter referred to as the Jordan land and Jordan timber rights, respectively). McClung did not have the money to exercise his option and therefore sought a buyer for the property. On May 28, 1971, Jimmy Hatcher (Hatcher), a business associate of petitioner, signed an agreement captioned "Option Contract for Sale" in which McClung contracted to sell and Hatcher contracted to buy some 24,468 acres of the Jordan land and Jordan timber rights for $3,364,400. Although petitioner's name did not appear on the contract, Hatcher signed the document on behalf of himself and petitioner as equal partners. In July 1971 petitioner indicated to his accountant a desire to sell the Everett timber rights on an installment basis but also indicated that he needed cash with which to make another investment. Petitioner's decision to sell the Everett timber rights was attributable to his desire to acquire an interest in the Jordan land and Jordan timber rights. [3]
*465 On August 9, 1971, petitioner for consideration of $10,000 granted Lockhart Lumber Company (Lockhart), a 14-day option to acquire the Everett timber rights for $1,270,000. Petitioner and Lockhart both wanted to structure the sale on an installment basis. On August 23, 1971, the option granted Lockhart was extended until September 27, 1971. [4]
Subsequent to August 23, 1971, and prior to September 17, 1971, Lockhart's attorney and others negotiated with the First National Bank of Mobile on behalf of Lockhart for financing the purchase of the Everett timber rights on an installment basis. [5] These efforts were unsuccessful. Because Lockhart was unable to meet petitioner's requirement regarding an installment sale, petitioner considered the sale of the Everett timber rights to Lockhart to be at an end. At the time, Lockhart had never exercised its option to purchase the Everett timber rights and was not legally obligated to do so. *466 On September 13, 1971, petitioner met with counsel and Hatcher to discuss the alternatives. At this meeting, Hatcher suggested that petitioner consider exchanging the Everett timber rights for other timber rights of like kind, namely, the Jordan timber rights. Petitioner's attorney contacted McClung's attorney, William Mongoven (Mongoven), with respect to the possibility of such an exchange. McClung, aware that Lockhart was interested in acquiring the Everett timber rights, agreed to the exchange and authorized Mongoven to conduct the negotiation of the exchange and his sale of the Everett timber rights to Lockhart. Mongoven and petitioner's attorney negotiated the exchange prior to September 17, 1971. At the closing on September 17, 1971, the following event occurred: (a) McClung purchased the Jordan land and Jordan timber rights from the Jordan estate for $2,500,000. (b) Petitioner and Lockhart cancelled the option covering the Everett timber rights and petitioner refunded the $10,000 consideration he had received for such option to Lockhart. (c) Petitioner and McClung exchanged timber rights. [6]
*467 (d) McClung sold the Everett timber rights to Lockhart for $1,270,000. (e) McClung sold the Jordan land (absent the Jordan timber rights for 10 years) to Chipola Land Corporation (Chipola), a Florida corporation, which had been formed by petitioner and Hatcher on May 26, 1971, for the purpose of serving as an investment company to buy timber lands. [7]
(f) The Citizens Bank & Trust Company of Quincy, Fla., loaned $2,319,441 to Chipola.Approximately $1,853,260 of this amount was paid directly to McClung or the Jordan estate at the direction of McClung.
(g) Petitioner and Chipola delivered a mortgage executed by them to the Citizens Bank & Trust Company to secure Chipola's promissory note. The bank required that the mortgage cover both the Jordan land and timber rights. Immediately after the closing, there was no discussion or thought of petitioner selling the Jordan timber rights to Chipola. Petitioner's primary purpose in acquiring the Jordan timber rights was an investment. At the time of the exchange, the Everett timber *468 rights and the Jordan timber rights were property of a like kind. Respondent, in a statutory notice of deficiency, determined that the purported exchange by petitioner of the Everett timber rights constituted a sale of such rights to Lockhart and that the long-term capital gain realized on the transaction must be recognized in the taxable year 1971 rather than being deferred under section 1031(a). OPINION At issue is whether, as urged by petitioner, the September 17, 1971, transfer by petitioner of the Everett timber rights for the Jordan timber rights constituted a tax-free exchange within the meaning of section 1031(a). [8]
*469 Respondent, on brief, conceded that petitioner acquired the Everett timber rights as an investment. Nevertheless, he maintains that during the period August 9, 1971, to September 17, 1971, petitioner held the Everett timber rights primarily for sale and therefore was not entitled to the nonrecognition benefits of section 1031. This is a factual question requiring consideration of the circumstances surrounding the granting of the option on August 9, 1971, as well as the exchange, the primary purpose for acquiring and holding the property, and the nature of the property itself. See, e.g., Bernard v. Commissioner,T.C. Memo. 1967-176. After careful consideration of these factors, we believe that the granting of the option on August 9, 1971, did not effectuate a change in the primary purpose of petitioner in holding theproperty. See Malat v. Riddell,383 U.S. 569 (1966).We therefore conclude that petitioner has established that the Everett timber rights were held primarily for investment at all times relevant herein. Next, we consider respondent's alternative argument. It is respondent's position that the substance of the transactions involved *470 amounted to a sale of the Everett timber rights by petitioner to Lockhart and a reinvestment of the proceeds from such sale in the Jordan timber rights. In support of this position, respondent attaches significance to the option Lockhart had to purchase the Everett timber rights and asserts that McClung merely entered into the exchange in the capacity of an agent or conduit on behalf of petitioner. In our view, the evidence does not support respondent's position in any respect. At all times relevant herein and prior to the exchange, petitioner held title to the Everett timber rights. While Lockhart held an option to purchase the Everett timber rights, this option was never exercised. [9] Rather, on September 17, 1971, the option was cancelled. This is distinguishable from the situation in which the optionee has exercised the option and paid the purchase price prior to the exchange. See Rogers v. Commissioner,44 T.C. 126 (1965). Nor does the evidence support a finding that McClung acted as an agent *471 or conduit during the September 17, 1971, transaction. McClung was not involved in the agreement between Lockhart and petitioner. Lockhart was not involved in the agreement between McClung and petitioner. The mere fact that McClung might not have acquired the Everett timber rights if he did not anticipate their immediate resale to Lockhart is immaterial. Cf. Alderson v. Commissioner,317 F.2d 790 (9th Cir. 1963). We believe the series of events and legal documents which track the exchange cannot be ignored. The intent of the parties involved is reflected therein and coincides with the substance of the transactions. On August 9, 1971, petitioner granted Lockhart an option to purchase the Everett timber rights for cash. An installment sale with notes from Lockhart to petitioner which would be acceptable as collateral for a loan to petitioner by a third party was an integral part of the deal. [10] When petitioner's financial requirements could not be accommodated, petitioner considered the sale to be at an end. Subsequently, an exchange of like kind properties was negotiated and on September 17, 1971, such exchange was consummated.On that date the Everett *472 timber rights were transferred to McClung by petitioner, and the Jordan timber rights were transferred by McClung to petitioner. In *473 Coupe v. Commissioner,52 T.C. 394, 405 (1969), we stated: It is now well settled that when a taxpayer who is holding property for productive use in a trade or business enters into an agreement to sell the property for cash, but before there is substantial implementation of the transaction, arranges to exchange the property for other property of like kind, he receives the nonrecognition benefits of section 1031. Coastal Terminals,Inc. v. United States,320 F.2d 333 (C.A. 4, 1963); James Alderson,38 T.C. 215 (1962), reversed on other grounds 317 F.2d 790 (C.A. 9, 1963); Carlton v. United States,385 F.2d 238 (C.A. 5, 1967). Of crucial importance in such an exchange is the requirement that title to the parcel transferred by the taxpayer in fact be transferred in consideration for property received. * * * We believe the foregoing principles are applicable to this case. Accordingly, we hold that on September 17, 1971, there was effected an exchange of like kind property within the meaning of section 1031(a). See 124 *474 Front Street, Inc. v. Commissioner,65 T.C. 6 (1975); sec. 1.1002-1(d), Income Tax Regs.[11]
Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the year in issue.↩
2. It would have taken someone in the lumber business approximately two years to cut and remove the timber from these tracts of land. Petitioner considered clearing the timber himself but rejected the idea due to potential labor problems and the cost of machinery and equipment.↩
3. Petitioner apparently needed additional funds to finance the acquisition of the Jordan land and timber rights. The general plan devised by petitioner's accountant to accomplish this was to sell the Everett timber rights on an installment basis and use the buyer's note for the unpaid balance as collateral for a loan by a bank to petitioner in the amount of such note.↩
4. While the installment sale requirement was not part of the written option, it was extensively discussed by the parties involved and it was understoood that petitioner would require payment for the property on an installment basis.↩
5. The financing arrangement required by petitioner was presumably part of the negotiation between Lockhart's attorney and the First National Bank of Mobile.↩
6. It appears from the record that McClung acquired approximately 26,000 acres of property from the Jordan estate and transferred only 23,000-24,000 acres at the closing. This distinction has no bearing on the issue presented and will therefore be ignored. The duration of the Jordan timber rights acquired by petitioner on the exchange was approximately 10 years.↩
7. The May 28, 1971, agreement between Hatcher and McClung concerning the Jordan land and timber was thus modified by the conduct of the parties.↩
8. SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT. (a) Nonrecognition of Gain or Loss from Exchanges Solely in Kind.--No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.↩
9. Lockhart's failure to exercise its option was apparently due to its inability to obtain financing for the transaction which was acceptable to petitioner.↩
10. At trial and on brief, respondent argued that the written option agreement which contained no reference to an installment sale requirement was unambiguous and objected to the admissibility of extrinsic evidence that would vary or contradict its terms. In so doing, respondent relied on the parol evidence rule to bar the admission of such evidence. In some cases we have held that because respondent was not a party to the instrument involved, he may not rely upon the rule. In other cases we have followed the applicable state law regarding the admissibility of such evidence. See Estate of Craft v. Commissioner,68 T.C. 249 (1977), which extensively deals with both lines of cases. Under either approach, respondent cannot rely on the rule in this case as Florida courts also follow the so-called "third party" rule. See Palmer v. R.S. Evans, Jacksonville, Inc.81 So.2d 635↩ (Fla. 1955).
11. Sec. 1002 was repealed by sec. 1901(b)(28)(B)(i) of P.L. 94-455, effective for taxable years beginning after December 31, 1976. The provision formerly contained in sec. 1002 is now set forth in sec. 1001(c).↩