OPINION The case at bar requires us to determine whether the transaction between petitioner and Firemen’s represents a sale of petitioner’s option or whether it represents an exchange of properties within the provisions of section 1031. If it is the latter we must then determine whether petitioner must include the amount deposited by Firemen’s into the escrow account which petitioner used to exercise its option as gain recognized on the exchange, and whether the $45,000 which petitioner concedes represents additional gain recognized on the exchange should be characterized as short-term or long-term capital gain. Respondent’s position, that in reality the transaction between petitioner and Firemen’s was merely a sale of the option, was raised by him in an amendment to his answer to petitioner’s petition. Generally it is the petitioner who must bear the burden of proof in matters before this Court; however, it is the respondent who bears the burden of proof with respect to this position. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent’s primary argument is that, we should view this transaction in its entirety and not consider its individual, component steps. However we have been presented with a series of legal documents that carefully track the development of this transaction. We do not believe that these documents can be ignored. Furthermore, it appears that the. structure of the transaction is consistent with the intent of the parties. In Leslie Q. Coupe, 52 T.C. 394,405 (1969), we said: It is now well settled that when a taxpayer who is holding property for pro-ductivé use in a trade or business enters into an agreement to sell the property for cash, but before there is substantial implementation of the transaction, arranges to exchange the property for other property of like kind, he receives the nonrecognition benefits of section 1031. Coastal Terminals, he. v. United States, 320 F. 2d 333 (C.A. 4, 1963); James Alderson, 38 T.C. 215 (1962), reversed on other grounds 317 F. 2d 790 (C.A. 9, 1963); Carlton v. United States, 385 F. 2d 238 (C.A. 5,1967). Of crucial importance in such an exchange is the requirement that title to the parcel transferred by the taxpayer in fact be transferred in consideration for property received. In the instant case, under the agreement between the parties petitioner always had the right to designate exchange property as consideration for the option property in lieu of cash. Petitioner also, as will be discussed later, acquired the option property which was later exchanged for the exchange property. In Mercantile Trust Co. of Baltimore et al., Executors,. 32 B.T.A. 82 (1935), the taxpayer entered into an agreement with a title company whereby the taxpayer would either sell or exchange his property with the title company depending on whether the. latter could acquire suitable exchange property. Such property was acquired and the transaction was closed with the various parties executing the necessary deeds of conveyance. Respondent disregarded the form of the transaction and determined that petitioners had sold their property and then purchased the exchange property in two separate transactions. In holding for the petitioners we said in Mercantile Trust Co. of Baltimore et al, Executors, supra at 86: Respondent admits that the transaction was carried out in a legal manner, and that no fraud was perpetrated. We cannot find that it was a mere device, essentially fictitious. The several agreements and deeds executed, and the cash payments made by the four interested parties were not simulated transactions. They were intended to and did constitute juristic facts — not fictions. The agreements created fixed liabilities. The deeds transferred legal title. The cash payments were real. Petitioners actually conveyed the Baltimore Street property to the Title Co. They likewise received from that company, in exchange, the Lexington Street property and $33,000. These real transactions must here be given their normal effect. So, our single inquiry is whether these facts bring the petitioners in the pending transaction within the scope of the quoted statutory provisions. We believe this statement can be applied to the case at bar. In Alderson v. Commissioner; 317 F. 2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962), the respondent asked the court to uphold its determination that the parties could not successfully disguise their actions and that the taxpayers had sold their property. The court refused, finding “a plan to exchange the properties within the intent of the statute (sec. 1031, I.R.C. of 1954).” Alderson v. Commissioner, supra at 794. The court based this conclusion on an earlier finding that the parties from the outset intended to exchange properties. After a careful review of the evidence we find no indication that petitioner intended to sell, or that Firemen’s intended to buy, petitioner’s option. We believe the agreement between the parties anticipated a sale or exchange of the option property after petitioner exercised its option. Respondent also argues that petitioner intended to sell its option (its major asset) when it listed its stock for sale with Coldwell. This listing occurred in 1967 and we believe it is too remote to have a bearing on the transaction in issue. Consequently, we do not find that petitioner sold its option to Firemen’s, but rather we find a valid plan to exchange properties within the intent of section 1031. Having made this determination we can now move on to a consideration of the consequences of the transaction. Respondent’s argument is that, even if the parties exchanged properties, the $425,000 represents part of the consideration received by petitioner on the exchange of properties and, as such it is “boot” which must be included as an additional portion of the gain realized that must be recognized. Petitioner argues that the $425,000 represents a loan by Firemen’s to enable it to purchase the option property which was repaid when the properties were exchanged. Petitioner held an option to purchase property that Firemen’s wished to acquire. Petitioner however did not have the financial resources to exercise the option. Petitioner, through Hogland, asked Firemen’s for assistance in the acquisition of the option property. Negotiations followed which resulted in the agreement as described in our findings of fact. We believe that the agreement and the surrounding circumstances support petitioner’s position. Under the agreement Firemen’s was to deposit the $425,000 into the escrow account. This sum was to be used by petitioner to purchase the option property. If this goal could not be accomplished, the agreement specifies that the $425,000 was to be returned to Firemen’s. Further, the agreement contemplates a sale or exchange of the option property between the parties. This could only be accomplished after petitioner first acquired the option property. We do note that, under tjie agreement after the option property was acquired, it was to be transferred to Firemen’s within a specified period of time. Although petitioner was to have the building for only a short period, we believe that during this time it was the actual owner of the option property. Petitioner’s title to the option property was acquired in August 1969, and it was not formally transferred to Firemen’s until February 1970. In addition to possessing legal title, it appears that the “benefits and burdens” of ownership were with the petitioner. See Gordon J. Harmston, 61 T.C. 216 (1973), on appeal(9th Cir., Feb. 8,1974). Petitioner received the rental income generated by the option property and reported it along with the depreciation deduction associated with the option property on its 1969 tax return. Petitioner also insured the property and Firemen’s, in October 1969, refused to make a repair to the option property claiming it was not the owner. Furthermore, although Firemen’s entered into a lease with the lessee in August 1969, it was not to take effect until Firemen’s had title to the option property. Respondent introduced the testimony of David L. Hardin, an executive of Firemen’s who was involved in this transaction. He testified that neither his files of, nor his personal involvement in, the transaction indicated that Firemen’s intended to make a loan to petitioner. However, Hardin also testified that his involvement in the transaction was limited. He readily admitted that he did not negotiate its terms and that he was not privy to all of the discussions between Hogland and Matchet. He also described himself as one who executed the instructions of his superiors. Hardin also testified that Firemen’s, a property and casualty insurance company, was required to maintain a high degree of liquidity so that it could quickly pay claims in the event of a major catastrophe. Firemen’s then did not generally make real estate loans which would restrict its assets. We believe this factor could account for the terms of this agreement, which were written by Firemen’s, and the fact that Firemen’s did not report the disbursement of the $425,000 as a real estate loan on its 1969 annual statement. Respondent argues that under Aquilino v. United States, 363 U.S. 509 (1960), the nature of the relationship between petitioner and Firemen’s must be determined under State law and that, pursuant to the applicable California law, the amount put into the escrow account was not a loan and that Firemen’s was not a creditor of petitioner. Under California law a loan of money is defined as when “one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed.” Cal. Civ. Code sec. 1912 (West 1954). Such loans are presumed to be made with interest unless it. is otherwise agreed when the loan is made. Cal. Civ. Code sec. 1914 (West 1954). See Bott v. American Hydrocarbon Corp.,458 F. 2d 229 (5th Cir. 1972). To support his position respondent has cited Milana v. Credit Discount Co., 27 Cal. 2d 335, 163 P. 2d 869, 871 (1945), and other California cases in which the determination of whether or not a loan existed was made after a consideration of the particular facts. We believe that the factual pattern of the instant case justifies a finding that the $425,000 represented a loan with which the petitioner could acquire the option property. The transaction as structured involves three parties — the Jourdain group, petitioner, and Firemen’s. However it appears that Firemen’s played two distinct roles — financier and purchaser. If petitioner had borrowed the necessary funds from a fourth party, the option property along with the indebtedness could have then been transferred to Firemen’s. The $425,000 could then have been used by Firemen’s to liquidate the debt. We do not believe that the source of petitioner’s funds should influence our ultimate conclusion. We believe the facts of this case are consistent with the finding that the funds advanced by Firemen’s represented a loan to petitioner. With these funds petitioner acquired the option property which it then transferred to Firemen’s. Consequently, we believe that the $425,000 does not represent consideration received by petitioner in exchange for the option property, but rather represents an amount received to acquire the option property. Finally we must determine whether the $45,000 petitioner received on the exchange and which it concedes does represent gain recognized is to be characterized as short-term or long-term capital gain. Title to the option property was formally recorded in petitioner’s name on August 25,1969. On February 13, 1970, the exchange between petitioner and Firemen’s was closed. On February 16, 1970, less than 6 months beyond August 25, 1969, this deed was formally recorded in Firemen’s name. This fact is dispositive of the issue of long-term versus short-term gain. The question of whether the $45,000 was or was not available within the 6-month period is irrelevant (although we believe it was) once the foregoing factual conclusion is made. William A. Cluff, 17 T.C. 225 (1951). Decision will be entered under Rule 155.