**Joseph R. BOLKER,
Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 84–7357.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1985.

Decided May 17, 1985.

Gilbert Dreyfuss, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for petitioner-appellee.

Raymond Hepper, Dept. of Justice, Washington, D.C., for respondent-appellant.

Before BOOCHEVER and BEEZER, Circuit Judges, and HARDY,* District Judge.

BOOCHEVER, Circuit Judge:

Bolker was the sole shareholder of the Crosby Corporation (Crosby) which owned the Montebello property. For tax purposes

* Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation.

associated with the anticipated development of the property, Bolker decided to liquidate Crosby and distribute Montebello to himself. Before Crosby carried out the liquidation, problems in financing convinced Bolker to dispose of the Montebello property rather than developing it himself. On the day the Crosby liquidation actually occurred, Bolker contracted to exchange Montebello with Southern California Savings & Loan (SCS) for other like-kind investment property to be designated. This exchange took place three months later. Bolker asserted, and the Tax Court agreed, that the exchange qualified for nonrecognition treatment under I.R.C. § 1031(a).[1] *Bolker v. Commissioner*, 81 T.C. 782 (1983). The Commissioner appeals. Because we believe that Bolker held the Montebello property for investment within the meaning of section 1031(a), we affirm.

The transaction was consummated as follows. In March 1972, Bolker commenced the liquidation of Crosby. On March 13, 1972, all of the following occurred:

(1) Crosby transferred all its assets and liabilities to Bolker in redemption of all Crosby stock outstanding;

(2) Bolker as president of Crosby executed the Internal Revenue Service liquidation forms;

(3) A deed conveying Montebello from Crosby to Bolker was recorded;

(4) Bolker and Parlex, a corporation formed by Bolker's attorneys to facilitate the exchange, executed a contract to exchange Montebello for properties to be designated by Bolker;

(5) Parlex contracted to convey Montebello to SCS in coordination with the exchange by Bolker and Parlex; and

(6) Bolker, Crosby, Parlex, and SCS entered into a settlement agreement dismissing a breach of contract suit pending by Crosby against SCS in the event that all the other transactions went as planned.[2]

On June 30, 1972, all the transactions closed simultaneously, SCS receiving Montebello and Bolker receiving three parcels of real estate which he had previously designated.

Bolker reported no gain on the transaction, asserting that it qualified for nonrecognition under then-current I.R.C. § 1031(a):

No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

The Commissioner sent Bolker statutory notices of deficiency on the ground that the transaction did not qualify under section 1031(a). In the Tax Court, the Commissioner argued two theories: that Crosby, not Bolker, exchanged Montebello with SCS, and in the alternative, that Bolker did not hold Montebello for productive use in trade or business or for investment.[3] The Tax Court rejected both arguments. The Commissioner does not appeal the decision that Bolker individually made the exchange. The Commissioner does not challenge any of the Tax Court's findings of fact; review of the Tax Court's decisions of law is de novo. *California Federal Life*

---

**1.** All references to the Internal Revenue Code are to the Internal Revenue Code of 1954 as amended and in force in 1972.

**2.** Crosby had filed a breach of contract suit against SCS in 1971 based upon SCS' failure to fulfill a prior contract to purchase Montebello. We do not discuss whether the settlement of this lawsuit as part of the transaction was an ex-

change of non-like-kind property, because the Commissioner did not raise the argument at trial or on appeal. *See* discussion Part I below.

**3.** The Commissioner concedes that the real estate received by Bolker was of like kind to the Montebello property.

*Insurance Co. v. Commissioner,* 680 F.2d 85, 87 (9th Cir.1982).

## I. STOCK FOR PROPERTY

Section 1031(a) specifically excludes from eligibility for nonrecognition an exchange involving stock. The Commissioner argues that Bolker's transactions should properly be viewed as a whole, under the step transaction doctrine, *see Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945) (court may view transaction as a whole even if taxpayer accomplishes result by series of steps), and that so viewed, Bolker exchanged his Crosby stock for property. The Commissioner did not argue this theory in the Tax Court.

 As a general rule, we will not consider an issue raised for the first time on appeal, *United States v. Greger,* 716 F.2d 1275, 1277 (9th Cir.1983) (taxpayer argued for first time on appeal that statute prohibiting assistance in preparation of false return cannot apply if preparer is innocent), *cert. denied,* —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), although we have the power to do so, *see Hormel v. Helvering,* 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941). This circuit has recognized three exceptions to this rule: in the "exceptional" case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, *see Greger,* 716 F.2d at 1277, when a new issue arises while appeal is pending because of a change in the law, *see United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983) (objection to plain view search first raised on appeal), *cert. denied,* —— U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), or when the issue presented is purely one of law and either does not depend on the factual

record developed below, or the pertinent record has been fully developed, *see United States v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978) (on appeal of conviction for assaulting federal officers in performance of their duties, government could not rely on a different statute defining federal officers than at trial because defendants might have tried their case differently in response). If one of the exceptions is applicable, we have discretion to address the issue.

 The Commissioner contends that the third exception applies in this case. Although a determination based on the step transaction doctrine would require reliance on the factual record, the Commissioner argues that the record is fully developed and that we could decide the issue on appeal without prejudice to Bolker's right at trial to present relevant facts. *See id.* at 712–13. Application of the step transaction doctrine requires a detailed factual inquiry, however, and there may be facts relevant to the issue which were not developed in the record. Moreover, Bolker's tactics, presentation of the facts, and legal arguments at trial might have been different if the Commissioner had argued the step transaction issue below.[4] We therefore decline to address the issue on appeal.

## II. THE HOLDING REQUIREMENT

The Commissioner argued unsuccessfully in the Tax Court that because Bolker acquired the property with the intent, and almost immediate contractual obligation, to exchange it, Bolker never held the property for productive use in trade or business or for investment as required by section 1031(a). Essentially, the Commissioner's position is that the holding requirement has two elements: that the taxpayer own the property to make money rather than for

---

**4.** At trial, the Commissioner argued that in substance the exchange of Montebello was negotiated and carried out by the corporation, and that the corporation, not Bolker, should be taxed on any gain realized. The Commissioner's evidence was directed toward proving that the exchange was the continuation and culmination of the 1969 corporate plan to sell Montebello, disguised as a liquidation and exchange to avoid tax consequences to the corporation. Bolker's evidence was directed toward proving that the corporate plan to sell Montebello had been abandoned, and that the 1971 negotiations were by Bolker as an individual despite the fact that Crosby still owned Montebello.

personal reasons, and that at some point before the taxpayer decides to exchange the property, he have intended to keep that property as an investment.

Bolker argues that the intent to exchange investment property for other investment property satisfies the holding requirement. Bolker's position also in essence posits two elements to the holding requirement: that the taxpayer own the property to make money, and that the taxpayer not intend to liquidate his investment.

Authority on this issue is scarce. This is not surprising, because in almost all fact situations in which property is acquired for immediate exchange, there is no gain or loss to the acquiring taxpayer on the exchange, as the property has not had time to change in value. Therefore, it is irrelevant to that taxpayer whether section 1031(a) applies. *See, e.g.,* D. Posin, *Federal Income Taxation* 180 & n. 46 (1983); Rev. Rul. 77–297, 1977–2 C.B. 304, 305. The cases generally address the taxpayer's intent regarding the property *acquired* in an exchange, rather than the property *given up.* The rule of those cases, *e.g., Regals Realty Co. v. Commissioner,* 127 F.2d 931, 933–34 (2d Cir.1942), is that at the time of the exchange the taxpayer must intend to keep the property acquired, and intend to do so with an investment purpose. That rule would be nonsense as applied to the property given up, because at the time of the exchange the taxpayer's intent in every case is to give up the property. No exchange could qualify.

The Commissioner cites two revenue rulings to support his position, Rev.Rul. 77–337, 1977–2 C.B. 305, and Rev.Rul. 77–297. Revenue rulings, however, are not controlling. *Ricards v. United States,* 683 F.2d 1219, 1224 & n. 12 (9th Cir.1981) (revenue rulings not binding although entitled to consideration as "body of experience and informed judgment"). Moreover, neither ruling is precisely on point here. In Revenue Ruling 77–337, A owned X corporation, which owned a shopping center. Pursuant to a prearranged plan, A liquidated X to acquire the shopping center so that he could immediately exchange it with B for like-kind property. A never held the shopping center, and therefore section 1031(a) did not apply. This case differs from 77–337 in two ways. First, the liquidation was planned before any intention to exchange the properties arose, not to facilitate an exchange. Second, Bolker did actually hold Montebello for three months.

In Revenue Ruling 77–297, B wanted to buy A's ranch, but A wanted to exchange rather than sell. A located a desirable ranch owned by C. Pursuant to a prearranged plan, B purchased C's ranch and immediately exchanged it with A for A's ranch. As to A, the exchange qualifies under section 1031(a). As to B, it does not, since B never held C's ranch, and acquired it solely to exchange. The same distinctions as in 77–337 apply between this ruling and the facts in *Bolker.* Neither ruling cites case authority for its holdings.

Bolker cites two cases that support his position. In each case, the Tax Court gave section 1031(a) nonrecognition to a transaction in which the property given up was acquired with the intention of exchange. However, neither case actually considered the holding issue, which diminishes the persuasiveness of the authority. In *124 Front Street, Inc. v. Commissioner,* 65 T.C. 6 (1975), taxpayer owned an option to purchase real estate. Firemen's Fund Insurance Co. (Firemen's) wanted the property, but taxpayer preferred an exchange to a sale. Firemen's advanced taxpayer the money to exercise its option under a contract providing that taxpayer would exchange the property for property to be acquired by Firemen's. *Id.* at 8–11. Taxpayer exercised its option, and the exchange was consummated five months later when Firemen's had acquired property satisfactory to taxpayer. *Id.* at 12. The issue in the case was whether the transaction was the sale of the option to Firemen's, or an exchange of the property with Firemen's. The court held that it was an exchange, and therefore qualified under section 1031(a). *Id.* at 15. The court ap-

parently never considered whether the fact that the optioned property was acquired solely for exchange meant that it was not held for investment under section 1031(a). Even without an explicit holding, however, the case does support Bolker's theory that an intent to exchange for like-kind property satisfies the holding requirement.

*Rutherford v. Commissioner*, T.C.M. 1978–505, 37 T.C.M. (CCH) 1851–77, is an unusual case with a holding similar to *124 Front Street*. W, a cattle breeder, agreed with R, another breeder, to exchange W's twelve half-blood heifers for twelve three-quarter blood heifers to be bred from the half-blood heifers. W gave R the twelve half-blood heifers. R bred them to a registered bull and gave W the first twelve three-quarter blood heifers produced. *Id.* at 1851–77 to 1851–78. At stake in the case were depreciation deductions. En route to determining R's basis in the half-blood heifers for depreciation purposes, the Tax Court held that the exchange of heifers qualified for nonrecognition under section 1031(a). *Id.* at 1851–79. Although the court did not even mention the point, the facts indicate that when by virtue of their birth R "acquired" the three-quarter blood heifers, the property he gave up, he had already contracted to exchange them. Thus, *Rutherford* also supports Bolker's position, albeit tacitly.

The Tax Court's holding in this case is based on its recent opinion in *Magneson v. Commissioner*, 81 T.C. 767 (1983) (court reviewed), *aff'd*, 753 F.2d 1490 (9th Cir. 1985). In *Magneson*, taxpayers exchanged property for like-kind property and then by prearrangement contributed the property they acquired to a partnership. Each transaction viewed separately was admittedly tax-free, but in combination raised the issue whether contribution to a partnership satisfies the holding requirement for the acquired property. The *Bolker* Tax Court interpreted *Magneson* as holding that an intent to continue the investment rather than selling it or converting it to personal use satisfied the holding requirement, even if the taxpayer never intended to keep the specific property acquired. In

both *Bolker* and *Magneson*, the Tax Court emphasized the admitted nonrecognition treatment accorded each individual step in the transactions, and reasoned that if each step were tax-free, in combination they should also be tax-free, so long as the continuity of investment principle underlying section 1031(a) is respected. *See Bolker*, 81 T.C. at 805–06; *Magneson*, 81 T.C. at 771.

We recently affirmed *Magneson* but our rationale differed from that of the Tax Court. While we recognized the importance of continuity of investment as the basic purpose underlying section 1031(a), *see* H.R.Rep. No. 704, 73d Cong., 2d Sess. 12, *reprinted in* 1939–1 C.B. (pt. 2) 554, 564, we did not hold that that principle justifies the failure to address the specific requirements of section 1031(a). Rather, we based affirmance on our holding that the Magnesons intended to and did continue to hold the acquired property, the contribution to the partnership being a change in the form of ownership rather than the relinquishment of ownership. *Magneson*, at 1495–96. Thus the Magnesons satisfied the specific requirements of section 1031(a). Nothing in *Magneson* relieves Bolker of his burden to satisfy the requirement that he have held the property given up, Montebello, for investment.

Finally, there is nothing in the legislative history which either supports or negates Bolker's or the Commissioner's position. In sum, the Commissioner is supported by two revenue rulings which are neither controlling nor precisely on point. Bolker is supported by two Tax Court decisions which did not explicitly address this issue. In the absence of controlling precedent, the plain language of the statute itself appears our most reliable guide.

■ The statute requires that the property be "held for productive use in trade or business or for investment." Giving these words their ordinary meaning, *see Greyhound Corp. v. United States*, 495 F.2d 863, 869 (9th Cir.1974) (if Code does not define term, court should give words their

ordinary meaning), a taxpayer may satisfy the "holding" requirement by owning the property, and the "for productive use in trade or business or for investment" requirement by lack of intent either to liquidate the investment or to use it for personal pursuits. These are essentially the two requirements courts have placed on the property *acquired* in a section 1031(a) exchange, *see, e.g., Regals Realty,* 127 F.2d at 933–34 (intent to sell disqualifies exchange); *Click v. Commissioner,* 78 T.C. 225, 233–34 (1982) (intent to give as gift disqualifies exchange), so this interpretation would yield the symmetry the use of identical language seems to demand.

The Commissioner's position, in contrast, would require us to read an unexpressed additional requirement into the statute: that the taxpayer have, previous to forming the intent to exchange one piece of property for a second parcel, an intent to keep the first piece of property indefinitely. We decline to do so. *See Starker v. United States,* 602 F.2d 1341, 1352–53 (9th Cir. 1979) (refusing to read unexpressed additional requirement of simultaneous exchange into § 1031(a)).[5] Rather, we hold that if a taxpayer owns property which he does not intend to liquidate or to use for personal pursuits, he is "holding" that property "for productive use in trade or business or for investment" within the meaning of section 1031(a). Under this formulation, the intent to exchange property for like-kind property satisfies the holding requirement, because it is *not* an intent to liquidate the investment or to use it for personal pursuits. Bolker acquired the Montebello property with the intent to exchange it for like-kind property, and thus he held Montebello for investment under

section 1031(a). The decision of the Tax Court is therefore

AFFIRMED.

---

5. *Starker's* specific holding that section 1031(a) does not require simultaneous exchange, 602 F.2d at 1354–55, has been limited by a revision of section 1031(a). Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 77, 98 Stat. 494, 595 (effective July 19, 1984; requiring that property acquired be designated and exchanged within 180 days after taxpayer transfers the property given up). The addition of this requirement, specifically drafted in response to *Starker, see* H.R.Rep. No. 432, 98th Cong., 2d Sess. 1231, *reprinted in* 6B 1984 U.S.Code Cong. & Ad.News 1, 201, does not affect the validity of *Starker's* refusal to read unexpressed requirements into the then-current version of section 1031(a).