KENNETH JAMES KUNKEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kunkel v. Commissioner
Docket No. 24705-93
United States Tax Court
T.C. Memo 1995-162; 1995 Tax Ct. Memo LEXIS 155; 69 T.C.M. (CCH) 2376; April 10, 1995, Filed *155 Decision will be entered under Rule 155. Kenneth James Kunkel, pro se. For respondent: Thomas M. Rath. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioner's income tax: Additions to tax
Year
Deficiency
Sec. 6662(a)
1989
--  $ 819
1990
$ 8,038
3,077
For each of the years in issue, petitioner filed a joint return with his wife, Mrs. Susan K. Kunkel. However, Mrs. Kunkel did not join in the filing of the petition in this case. The issues for decision are: (1) Whether the gain realized during 1990 by petitioner and his wife from the sale of certain real property held for investment, qualifies for nonrecognition pursuant to section 1031; and (2) whether petitioner is liable for the addition to tax under section 6662(b)(1) for negligence as determined by respondent for 1989 and 1990. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue. FINDINGS OF FACT The parties stipulated some of the facts in this case, and the Stipulation of Facts filed by the parties is incorporated *156 herein by this reference. At the time of trial, petitioner and his wife resided in North Wales, Pennsylvania. During 1989 and part of 1990, petitioner and Mrs. Kunkel owned a condominium located at 5832 Central Avenue, Ocean City, New Jersey (the Central Avenue Property). On March 24, 1990, petitioner and Mrs. Kunkel executed a Contract For Sale of Real Estate, dated March 21, 1990, under which they agreed to sell the Central Avenue Property to Mr. and Mrs. Mervyn Clevenger for $ 267,500. On April 6, 1990, petitioner and Mrs. Kunkel entered into a contract to purchase another property located at 4312 Asbury Avenue, Ocean City, New Jersey (the Asbury Avenue Property) from Mr. John H. Hornberger for $ 185,000. On April 16, 1990, petitioner and Mrs. Kunkel executed an amended contract to purchase the Asbury Avenue Property from Mr. Hornberger. The closing of the purchase of the Asbury Avenue Property was scheduled to take place on August 1, 1990. On May 18, 1990, at the closing of the sale of the Central Avenue Property, petitioner and his wife executed an addendum to the contract for the sale of that property entitled: EXCHANGE AGREEMENT ADDENDUM TO AGREEMENT OF SALE DATED MARCH *157 21, 1990 BETWEEN KENNETH AND SUSAN KUNKEL, SELLERS, AND MERVYN CLEVENGER, ET ALS., [sic] BUYER, FOR THE PURCHASE OF PROPERTY KNOWN AS 5832 CENTRAL AVENUE, A FIRST FLOOR CONDOMINIUM, OCEAN CITY, NEW JERSEY. The addendum refers to "Seller's [petitioner's] objective of exchanging the property for other real estate, pursuant to the provisions of Section 1031 of the Internal Revenue Code." Under the addendum, petitioner agreed to "identify the Exchange Property before, at, or not later than 44 days after settlement for the property which is the subject matter of this agreement". The addendum further provides that the net proceeds of settlement were to be used to acquire exchange properties or were to be held by the title company in escrow pending the acquisition of exchange properties. Petitioner also executed an Escrow Agreement with the Title Company of Jersey which sets forth the following terms and conditions: THIS IS THE FIRST HALF OF A SECTION 1031 TAX DEFERRED EXCHANGE BEING CONDUCTED BY SELLER UNDER THE INTERNAL REVENUE CODE. ALL NET PROCEEDS FROM THE SALE WILL BE ESCROWED UNTIL SUCH TIME AS YOU ARE PREPARED FOR CLOSING FOR THE ACQUISITION OF A PROPERTY (NOT TO EXCEED 180 *158 DAYS FROM TODAY) WHICH YOU WILL IDENTIFY TO THE TITLE COMPANY OF JERSEY WITHIN FORTY FIVE DAYS OF THE DATE OF THE ESCROW AGREEMENT SO THE SECOND HALF OF A SECTION 1031 TAX DEFER [sic] EXCHANGE YOU ARE IN THE PROCESS OF CONDUCTING UNDER THE INTERNAL REVENUE CODE, SELLER MAY ELECT AT ANY TIME TO REMOVE THE FUNDS FROM THE ESCROW AND ACKNOWLEDGE THAT BY SO DOING THEY ARE VOIDING ANY CHANCES OF MAKING USE OF THE TAX DEFERRED EXCHANGE. IF THE FORTY FIVE DAYS PASS AND THE TITLE COMPANY OF JERSEY HAS NOT BEEN NOTIFIED IN WRITING OF THE IDENTIFYING PROPERTY THE ESCROW AGREEMENT WILL BE AUTOMATICALLY TERMINATED AND THE FUNDS RELEASED TO THE SELLER. On May 18, 1990, petitioner and Mrs. Kunkel sold the Central Avenue property to the Clevengers. According to the settlement statement from such sale, petitioner and his wife were due to receive cash in the amount of $ 80,950.97 from the sale. That amount was disbursed as follows: (1) $ 4,126 was paid to the Clevengers for rents previously collected by petitioner on the Central Avenue Property; (2) $ 10,000 was placed in an interest-bearing account with The Title Company of Jersey, to be used by petitioners as the deposit on the Asbury Avenue *159 Property; and, (3) $ 66,804.97 was placed in an escrow account with The Title Company of Jersey, pursuant to the Exchange Agreement Addendum described above. We note that the total of the above three amounts is $ 80,930.97. The record does not explain how the remaining $ 20 was disbursed. On September 10, 1990, petitioner, Mrs. Kunkel, and Mr. Hornberger executed another contract for the purchase of the Asbury Avenue Property. In a letter dated September 11, 1990, an attorney representing petitioner, Mr. Arnold H. Keehn, informed Mr. Hornberger and his wife that the September 10, 1990, contract had been "disapproved". Mr. Keehn's letter also states that the escrow agent, Title Company of Jersey, should return Mr. Kunkel's deposit of $ 10,000. Mr. Keehn sent a copy of his letter to the Title Company of Jersey. By letter dated September 19, 1990, petitioner requested the Title Company of Jersey to return the $ 66,804.97 that the company was holding in escrow. On the following day, the title company returned the $ 66,804.97 to petitioner together with $ 1,105.16 in interest. On September 26, 1990, the title company also returned petitioner's $ 10,000 deposit on the Asbury Avenue *160 Property plus $ 173.76 in interest, less a $ 150 cancellation fee. Sometime after receiving the funds from the title company, petitioner and Mrs. Kunkel invested the funds in two certificates of deposit. On August 31, 1991, 470 days after the sale of the Central Avenue Property, petitioner and Mrs. Kunkel purchased a lot located at 5837-39 Asbury Avenue, Ocean City, New Jersey (the Second Asbury Avenue Property). Petitioner and Mrs. Kunkel purchased the Second Asbury Avenue Property with the proceeds from the sale of the Central Avenue Property. Neither petitioner nor Mrs. Kunkel had identified the Second Asbury Avenue Property as exchange property within 45 days after the sale of the Central Avenue Property, as required by section 1031(a)(3)(A). On his 1990 return, petitioner reported a capital gain of $ 12,450 attributable to the sale of the Central Avenue Property. Petitioner now agrees that the amount of the gain was $ 37,583, an increase of $ 25,133. Respondent determined in the notice of deficiency that the entire capital gain should be recognized in 1990. The notice states as follows: It is determined that the sale of your rental property in Ocean City, New Jersey, *161 does not qualify to be reclassified as a like-kind exchange per Internal Revenue Code Section ( IRC 1031). The gain from this sale is to be reported as a capital gain and your taxable income was increased as shown above.
Petitioner concedes the following adjustments made by respondent in the notice of deficiency to petitioner's 1989 income tax return: As Claimed Increase
on Return
Actual in Income Rental loss
($ 25,000.00)
($ 23,717.00)
$ 1,283.00
Unreimbursed
employee expense
Mr. Kunkel
(8,948.00)
--   8,948.00
Mrs. Kunkel
(5,950.00)
(1,326.00)
4,624.00
Job hunting and
(6,750.00)
(747.00)
6,003.00
other expenses
2 percent of AGI
1,167.16 1,192.82 25.66
Total
(45,480.84)
(24,597.18)
20,883.66
Respondent's adjustment to the rental loss claimed on petitioner's 1989 return is attributable to petitioner's failure to substantiate certain maintenance and repair expenses relating to rental property owned by petitioner and Mrs. Kunkel. Petitioner also concedes the following adjustments made by respondent in the notice of deficiency to petitioner's 1990 income tax return: As Claimed Increase
on Return
Actual in Income Taxes paid
($ 6,414.87)
($ 5,971.00)
$ 443.87
Contributions
(3,935.00)
(1,139.00)
2,796.00
Rental loss
(25,000.00)
(17,153.00)
7,847.00
Misc. itemized
deductions
(18,822.36)
--
18,822.36
Depreciation
recapture
-- 2,520.00 2,520.00
Total
(54,172.23)
(21,743.00)
32,429.23
*162 OPINION The first issue for decision in this case is whether the gain realized by petitioner and Mrs. Kunkel from the sale of the Central Avenue Property qualifies for non-recognition under section 1031(a) on the ground that the property was exchanged for other property of like-kind. Respondent determined that the entire gain from the sale, $ 37,583, must be recognized in 1990. Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure. Hereinafter, all Rule references are to the Tax Court Rules of Practice and Procedure. "To qualify for nonrecognition, a taxpayer must satisfy each of the specific requirements as well as the underlying purpose of section 1031(a)." Chase v. Commissioner, 92 T.C. 874, 881 (1989) (citing Bolker v. Commissioner, 760 F.2d 1039, 1044 (9th Cir. 1985), affg. 81 T.C. 782 (1983)). Among other requirements, section 1031(a) provides that property received by the taxpayer shall be treated as property which is not like-kind, if it is not identified as exchange property within 45 days after *163 the date on which the taxpayer transfers the original property in the exchange, or if the property is received more than 180 days after the original property is relinquished or, if earlier, after the due date of the taxpayer's return. In relevant part, section 1031 provides as follows: (a) Nonrecognition Of Gain Or Loss From Exchanges Solely In Kind. -- (1) In General. -- No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment. * * * (3) Requirement That Property Be Identified And That Exchange Be Completed Not More Than 180 Days After Transfer Of Exchanged Property. -- For purposes of this subsection, any property received by the taxpayer shall be treated as property which is not like-kind property if -- (A) such property is not identified as property to be received in the exchange on or before the day which is 45 days after the date on which the taxpayer transfers the property relinquished in the exchange, or (B) such property is received after the *164 earlier of -- (i) the day which is 180 days after the date on which the taxpayer transfers the property relinquished in the exchange, or (ii) the due date (determined with regard to extension) for the transferor's return of the tax imposed by this chapter for the taxable year in which the transfer of the relinquished property occurs.
At trial, petitioner admitted that he had not identified the Second Asbury Avenue Property as exchange property within 45 days following the transfer of the Central Avenue Property. Petitioner testified as follows: THE COURT: Now what property do you claim was exchange property? MR. KUNKEL: 5837-39 Asbury Avenue. THE COURT: I'm just looking at the trial memoranda. That was acquired in August of 91? MR. KUNKEL: Yes. THE COURT: So was that property identified as exchange property within 45 days of the time you sold the first property? Mr. KUNKEL: No, sir.
It is also clear that petitioner did not obtain ownership of the Second Asbury Avenue Property until August 31, 1991, 470 days after the sale of the Central Avenue Property. Thus, in accordance with the express requirements of the statute, the Second Asbury Avenue Property "shall *165 be treated as property which is not like-kind property". Sec. 1031(a)(3). Therefore, petitioners have failed to satisfy the statutory requirements of section 1031, and the gain attributable to the Central Avenue Property must be recognized in petitioner's income for 1990. The second issue for decision is whether petitioner is liable for the addition to tax for negligence pursuant to section 6662(a). Under section 6662(a) and (b), if any portion of an underpayment of tax is due to negligence, the taxpayer is liable for an addition to tax equal to 20 percent of the portion of the underpayment attributable to such negligence. Section 6662(c) defines negligence as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. We have defined negligence as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of disproving respondent's determination that petitioner is liable for the addition to *166 tax for negligence with respect to his 1989 and 1990 returns. Rule 142(a); Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). For the year 1989, respondent determined that the addition to tax for negligence applies to the portion of the underpayment attributable to the miscellaneous itemized deductions that were disallowed in the notice of deficiency. Petitioner agrees with the adjustment but disagrees that he was negligent. At trial, petitioner introduced no evidence, other than his own testimony which we found to be self-serving and unreliable, to explain his failure to properly document the miscellaneous itemized deductions, principally unreimbursed employee expenses and job hunting expenses, disallowed by respondent. Based upon the record of this case, we find that petitioner has failed to carry his burden of proving that he was not negligent with respect to his 1989 return, and we sustain respondent's determination of the addition to tax for negligence for 1989. For the year 1990, respondent determined that the addition to tax for negligence applies to the portion of the underpayment attributable to five adjustments: The rental loss adjustment *167 in the amount of $ 7,847, the depreciation recapture adjustment in the amount of $ 2,520, the adjustment to contributions in the amount of $ 2,796, the adjustment to miscellaneous itemized deductions in the amount of $ 20,153, and the adjustment to capital gains and losses in the amount of $ 25,133, attributable to the sale of the Central Avenue Property. Petitioner testified that the rental loss adjustment for 1990 was similar to the same adjustment for 1989. In brief, petitioner explained that he was unable to document maintenance payments and repair expenses attributable to his rental property because many people who provide such services "want to be paid in cash". We further note that respondent did not impose the negligence addition as to the rental loss adjustment for 1989. We accept petitioner's testimony that he was not negligent with respect to the underpayment attributable to the rental loss adjustment in the amount of $ 7,847, and we do not sustain respondent's determination of the addition to tax for negligence as to that adjustment. As to the other adjustment to petitioner's 1990 return, we found petitioner's testimony that he was not negligent to be self-serving *168 and unreliable. Petitioner presented no other credible evidence to explain his failure to properly report these items. We, therefore, sustain respondent's determination that petitioner and his wife are liable for the addition to tax for negligence with respect to the other adjustments in 1990. Decision will be entered under Rule 155.